**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLUMBIA**

FILED
NOV 03 2009
Clerk, U.S. Bankruptcy District and Courts

|  |  |
|---|---|
| In re:<br><br>**PITTSBURGH CORNING CORPORATION,**<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Misc. No. _____

Case No. 00-22876-JKF
United States Bankruptcy Court
for the Western District of
Pennsylvania

## MOTION TO QUASH SUBPOENA
## ISSUED TO SCOTT GILBERT, ESQ.

In accordance with Fed. R. Civ. P. 45, Scott Gilbert, Esq., moves to quash the

subpoena issued by Century Indemnity Company ("Century") to compel him to give

a second deposition in the bankruptcy proceedings of Pittsburgh Corning

Corporation, which are pending in the United States Bankruptcy Court for the

Western District of Pennsylvania.

### I.    FACTS

1.    Pittsburgh Corning manufactured and distributed Unibestos, a pipe

insulation that contained asbestos.  As a result, Pittsburgh Corning was sued by

hundreds of thousands of tort claimants who alleged personal injuries from

exposure to Unibestos.  On April 16, 2000, Pittsburgh Corning filed a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Western District of Pennsylvania.  Pittsburgh Corning's

bankruptcy case remains pending in that court.

1

9300/017/1139017.1

2.      Pittsburgh Corning is owned by PPG Industries, Inc., and Corning, Inc., each of which owns fifty percent of Pittsburgh Corning's stock.  Based in part on their ownership of Pittsburgh Corning, PPG and Corning also faced thousands of suits by asbestos tort claimants, which they hoped to resolve as part of Pittsburgh Corning's bankruptcy.

3.      As is typical in bankruptcies of asbestos companies, the bankruptcy court appointed a committee (the "Asbestos Claimants' Committee" or "ACC") to represent the interests of those creditors with tort claims against Pittsburgh Corning alleging personal injury from exposure to asbestos.  The bankruptcy court also appointed a Future Claimants' Representative (the "FCR") to represent the interests of those who had been exposed to Pittsburgh Corning asbestos but had not yet become aware of any alleged injuries.

4.      On July 28, 2003, the ACC and FCR applied to the bankruptcy court to retain Mr. Gilbert's firm (then known as Gilbert Heintz & Randolph LLP and now known as Gilbert LLP) for the limited purpose of pursuing claims against PPG's and Corning's insurers for insurance coverage of asbestos-related tort liabilities. Mr. Gilbert has over twenty-five years of experience representing policyholders against insurers, particularly policyholders with large asbestos tort liabilities, and his firm has been retained to handle insurance coverage issues in numerous asbestos-related bankruptcies.

5.      Century and other insurers objected to the application, arguing that Mr. Gilbert's firm had a conflict of interests in representing the ACC and FCR

2

because of the firm's prior representation of Corning as special insurance counsel. According to Century and the other insurers, Mr. Gilbert's firm was precluded from representing the ACC and FCR because they were adverse to Corning on the issue of liability for asbestos tort claims. The ACC and FCR, however, responded that Mr. Gilbert's firm had represented Corning solely for the limited purpose of pursuing insurance coverage from its insurers. The ACC and FCR argued that they had the same interest as Corning: recovery of disputed insurance proceeds directly from the insurers to cover asbestos claims. Moreover, the ACC and FCR stressed that Corning had also waived any potential conflicts of interests arising from the representation.

6.      On July 18, 2003, Mr. Gilbert was deposed in the Pittsburgh Corning bankruptcy case by Century and other insurers that had objected to the retention of his firm. The deposition began at 9:30 am and lasted until 4:30 pm. Mr. Gilbert was questioned vigorously and at length about his firm's representation of Corning, his firm's proposed representation of the FCR and the ACC, the alleged potential for a conflict of interests, and other matters.

7.      On April 27, 2004, the bankruptcy court denied the retention application on the ground that Mr. Gilbert's firm had a conflict of interests as a result of its prior representation of Corning.

8.      Since the bankruptcy court's denial of the retention application, neither Mr. Gilbert nor his firm has done any work at all for the ACC, the FCR, or any other party in connection with the Pittsburgh Corning bankruptcy case.

3

9.      Between 2004 and July 2009, Century made no further effort to depose Mr. Gilbert.

10.     On July 14, 2009, however, Century subpoenaed Mr. Gilbert to testify in a New York state court case between Corning and Century involving coverage for asbestos claims under Corning's policies. *See* Exhibit 1 Attached to Declaration of Mark A. Packman ("Packman Decl."). By letter dated July 24, 2009, Mr. Gilbert objected to this subpoena on the grounds of undue burden and to the extent it sought privileged information. *See* Exhibit 2 Attached to Packman Decl. Counsel for Century and Mr. Gilbert had a "meet and confer" session on August 4, and, by letter dated September 1, Mr. Gilbert reiterated his burden and privilege objections. *See* Exhibit 3 to Packman Decl. Century has not pursued the subpoena in the Corning coverage case.

11.     On October 22, Century served Mr. Gilbert with the subpoena at issue here. *See* Exhibit 4 to Packman Decl. It called for Mr. Gilbert to testify on October 30. On October 23, counsel for Mr. Gilbert emailed counsel for Century, stating that Mr. Gilbert was not available on October 30 and that, in any event, Century was not entitled to a second deposition. *See* Exhibit 5 to Packman Decl. Counsel for Century requested alternative dates.

12.     By letter dated November 2, counsel for Mr. Gilbert stated that, in the event a deposition were to go forward, Mr. Gilbert would be available November 13, 18, or 19, but reiterated that Century had no right to re-depose Mr. Gilbert. *See* Exhibit 6 to Packman Decl.

9300/017/1139017 1

13.     On November 2, the parties met and conferred by telephone. Century maintained that it had the right to take Mr. Gilbert's deposition and that the dates proposed by Mr. Gilbert were unacceptable because discovery in Pittsburgh Corning's bankruptcy closes on November 6. Mr. Gilbert's counsel explained that Mr. Gilbert was not available the week of November 2 due to out of town commitments for other client and professional matters.

14.     On November 3, counsel for Mr. Gilbert emailed counsel for Century reiterating that Century is not entitled to a second deposition. *See* Exhibit 7 to Packman Decl. Mr. Gilbert is now filing the present motion under Rule 45 to quash the subpoena.

## II.    ARGUMENT

### A.    The Court Must Quash The Subpoena Because It Failed To Allow A Reasonable Time To Reply

Federal Rule of Civil Procedure 45(c)(3)(A)(i) provides that a court "must quash or modify a subpoena" if it "fails to allow a reasonable time to comply." Although the rule does not specify what constitutes a reasonable time, Mr. Gilbert respectfully submits that ten days is unreasonable. *See, e.g., Anderson v. Dobson*, No. 1:06CV2, 2006 WL 3390631, at *3 (W.D.N.C. Nov. 22, 2006) (finding that ten days notice of depositions "simply do[es] not provide reasonable time for the witnesses to prepare").

Here, the subpoena is dated October 20 (and was not served on Mr. Gilbert until October 22), and listed the date for Mr. Gilbert's deposition as October 30. This bankruptcy has been pending for almost a decade, and counsel for the insurers

offer no explanation for their failure to attempt to depose Mr. Gilbert until a few

days before the discovery cut-off. Although Century is agreeable to postponing the

October 30 date, Mr. Gilbert is not available until November 13 due to other

professional commitments. In any event, the Court must evaluate the subpoena as

written, and not as modified by later agreement. *See Recycled Paper Greetings, Inc.*

*v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *4 n.1 (N.D. Ohio 2008) ("While the

Court appreciates and encourages parties' efforts to accommodate and cooperate,

the question before this Court is whether *these* issued subpoenas [dated January 22,

2008], requiring . . . February 1, 2008 depositions, violate the Federal Rules of Civil

Procedure.") (emphasis in original).

> **B.      The Court Must Quash The Subpoena Because It Subjects Mr.
> Gilbert To Undue Burden**

Under Federal Rule of Civil Procedure 45(c)(3)(A)(iv), the court "must quash

or modify a subpoena" that "subjects a person to undue burden." Additionally,

where the deponent is not a party to the suit, "concern for the unwanted burden

thrust upon non-parties is a factor entitled to special weight in evaluating the

balance of competing needs." *Miscellaneous Docket Matter #1 v. Miscellaneous*

*Docket Matter #2*, 197 F.3d 922, 927 (8th Cir. 1999). Here, Mr. Gilbert is a non-

party, and therefore the burden caused by requiring him to be deposed, especially

considering the short notice, must be given special weight.

Typically the party seeking to modify or quash a subpoena bears the burden

of showing an undue burden. *Guantanamera Cigar Co. v. Corporacion Habanos,*

*S.A.*, No. 08-0721, 2009 WL 2514082, at *6 (D.D.C. Aug. 18, 2009). The burden

9300/017/1139017.1

shifts, however, when the potential deponent is opposing counsel. *Id.* "Depositions

of opposing counsel are generally disfavored in federal courts." *Id.* When seeking to

depose opposing counsel, "the cards are stacked against the requesting party from

the outset and they must prove the deposition's necessity." *Id.* This standard

requires showing that "(1) no other means exist to obtain the information than to

depose opposing counsel; (2) the information sought is relevant and nonprivileged;

and (3) the information is crucial to the preparation of the case." *Id.*

Here, although Mr. Gilbert currently does not represent any party in the

Pittsburgh Corning bankruptcy, he represented Corning Inc., whose interests are

adverse to those of Century, and he sought to represent the ACC and the FCR,

whose interests are likewise adverse to those of Century. *See generally Knepp v.*

*United Stone Veneer, LLC*, No. 4:06-CV-1018, 2007 WL 4437225, at *1 (M.D. Pa.

Dec. 14, 2007) (finding that although attorney no longer represented plaintiff, "the

deposition of that attorney and the subpoena of his records still clearly implicates

the attorney-client privilege and the work-product doctrine"). Century's counsel has

failed to demonstrate that it cannot obtain the information it seeks from Mr. Gilbert

from any other source. Century also fails to show that the information is relevant

and nonprivileged, and that the information is crucial to Century's case. Thus, the

motion to quash should be granted.

Regardless of which party bears the burden on this motion, the subpoena

also should be quashed because it seeks to subject Mr. Gilbert to the undue burden

of a second deposition in this case. In *Miscellaneous Docket Matter #1*, 197 F.3d

7

9300/017/1139017.1

922, the Eighth Circuit upheld the district court's ruling quashing a subpoena issued to an individual who had already been deposed. The court upheld the district court's finding that "quashing the subpoena on undue burden grounds was warranted because appellants had the opportunity to ask questions concerning [the matter at issue in the case] at the [previous] deposition, but did not do so." *Id.* at 926; *see also Guantanamera*, 2009 WL 2514082, at *2 (although the procedural posture of the case was such that multiple depositions of certain witnesses could be justified, fairness required that all possible questions be asked at the first deposition "at one time," for the witness' sake).

Here, Mr. Gilbert was deposed in this case in 2003 by counsel for the insurers. Counsel for Century attended that deposition and had ample opportunity to question Mr. Gilbert. Requiring Mr. Gilbert to testify again would impose an undue burden.[1]

## CONCLUSION

For the reasons stated above, this Court should quash the subpoena issued to Mr. Gilbert.

---

[1] Federal Rule of Civil Procedure 45(c)(3)(A)(iii) also provides that a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Insofar as Century seeks to question Mr. Gilbert about his communications with Corning Inc., the ACC, or the FCR, those questions are protected by the attorney-client privilege. *See, e.g.*, *Knepp*, 2007 WL 4437225, at *2-4 (quashing a subpoena to depose an attorney when the defendant sought to discover information about the attorney's advice to the client).

9300/017/1139017.1

Dated:  November 3, 2009

Respectfully submitted,

_____

David B. Killalea (D.C. Bar 418712)
Mark A. Packman (D.C. Bar 336321)
Gilbert LLP
1100 New York Avenue, NW
Suite 700
Washington, DC  20005

*Counsel for Movant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2009, I caused a copy of

the foregoing to be delivered by email and U.S. Mail to the following persons:

Tancred Schiavoni
Gary Svirski
Bradley Rice
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2200

Justin Conrad
White and Williams LLP
The Frick Building
437 Grant Street, Suite 1001
Pittsburgh, PA 15219
(412) 566-3527

_____
Mark A. Packman

9

9300/017/1139017.1